IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CLARA L. TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:08CV95-SRW |
| | ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

Plaintiff Clara L. Turner brings this action pursuant to 42 U.S.C. § 405(g)  seeking

judicial review of a decision by the Commissioner of Social Security ("Commissioner")

denying her application for disability insurance benefits  under the Social Security Act.  The

parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28

U.S.C. § 636(c).  Upon review of the record and briefs submitted by the parties, the court

concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

On August 27, 2004, plaintiff filed an application for disability insurance benefits.

On December 19, 2006, after the claim was denied at the initial administrative levels, an ALJ

conducted an administrative hearing.  The ALJ rendered a decision on February 21, 2007.

The ALJ concluded that plaintiff suffered from the severe impairments of "status post

ablation of the left greater saphenous vein with some venous insufficiency in the left

common femoral vein, without evidence of deep venous thrombosis, and left knee bursitis," and non-severe impairments of hypertension and status post left heart catheterization evidencing a normal heart." (R. 17). He found that plaintiff's impairments, considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform her past relevant work as a sewing machine operator. Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. On December 10, 2007, the Appeals Council denied plaintiff's request for review.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis

has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

On February 25, 2003, plaintiff sought treatment from Dr. Janice Hooks for hypopigmentation on both cheeks.  Dr. Hooks referred plaintiff to a dermatologist.  In May 2003, plaintiff sought treatment for abdominal pain.  In a follow-up visit three weeks later, plaintiff reported that her abdominal pain had resolved.  Dr. Hooks saw plaintiff in July 2003 and March 2004 for check-ups, noting hypertensive cardiovascular disease.  (R. 125-30).

On May 10, 2004, plaintiff visited Dr. Tai Chung complaining of left knee pain.  Dr. Chung ordered an MRI, which revealed prepatellar bursitis and mild thinning of the lateral patellar cartilage.  Dr. Chung believed that plaintiff's medial side pain was associated with her varicosities, and he recommended that she try some compression stockings.  Plaintiff did so and, at a follow-up appointment on May 28, 2004, reported that the compression stockings helped.  Dr. Chung noted that plaintiff's left knee problem was "minor," and he referred plaintiff to Dr. Ishwar Bhuta, a vascular surgeon, to see whether any vein stripping could be done to resolve plaintiff's varicose veins on a more permanent basis.   On June 10, 2004, after examining the plaintiff, Dr. Bhuta wrote to Dr. Chung expressing his conclusion that plaintiff's muscle cramps may be related to her medication or to low potassium, but that they were not caused by her varicosities.  Dr. Bhuta did not recommend surgery on the varicose veins, noting that the "only reason to do surgery would be purely cosmetic."  (R. 85-88).


Twelve days later, on June 22, 2004, plaintiff "self-referred" to Dr. Robert Engles of

Montgomery Vascular Surgery for another evaluation.  Dr. Engles scheduled plaintiff for a bilateral venous duplex to evaluate her for venous insufficiency.  After the venous duplex was conducted on June 30, 2004, Dr. Engles concluded that there was "[n]o evidence of a lower extremity deep venous thrombosis bilaterally," but "[s]ignificant saphenofemoral incompetence with the left leg more severe."  He indicated that "[t]his does represent venous insufficiency."   At a follow-up appointment on July 20, 2004, plaintiff reported increasing pain and discomfort, as well as intermittent swelling in her left leg.  Dr. Engles recommended that plaintiff undergo radio frequency ablation of the saphenous vein in her left leg.  (R. 89-92).   However, plaintiff's insurance company recommended that plaintiff try support stockings for six months.  (R. 172).

On August 2, 2004, plaintiff returned to Dr. Hooks to have medical leave paperwork completed.  She complained of left leg pain and shortness of breath.  Two days later, plaintiff returned to Dr. Hooks, complaining of chest discomfort.  Dr. Hooks noted an abnormal EKG; she prescribed Coreg and referred plaintiff for evaluation by a cardiologist.  The next day, on August 5, 2004, Dr. Hooks completed a form for plaintiff's employer, noting that plaintiff had ceased work on August 2, 2004 due to venous insufficiency, and that plaintiff was totally disabled for any occupation.  (R. 120-22).

On August 19, 2004, Dr. Kenneth Wool of Southeastern Cardiology Consultants admitted plaintiff to the hospital to rule out an infarction.  Dr. Mohammad L. Ahmed performed a cardiac catheterization on the plaintiff on August 20, 2004, finding no abnormalities.  Dr. Ahmed's conclusions were "[n]ormal coronary arteries with normal left

ventricular systolic function," and "[n]oncardiac chest pain."  He discharged the plaintiff, advising her to follow up with her primary care physician, and indicating that she "may have a GI source for current symptoms."  (R. 101; Exhibits 4F, 5F).

Six days after the cardiac catheterization, on August 26, 2004, Dr. Hooks completed two forms for the plaintiff: (1) a work excuse indicating that plaintiff was unable to return to work due to angina and pulmonary vascular disease; and (2) a disability form for Capital One Payment Protection indicating that plaintiff was totally disabled from her regular occupation and from any occupation due to peripheral vascular disease and angina, and that she would "never" be able to return to work.  (R. 118, 119).  Plaintiff returned to Dr. Hooks one month later to have a prescription filled and to have disability forms completed. (R. 116).  Dr. Hooks' notes indicate, on September 28, 2004,  that Dr. Wool had found no coronary artery disease.  She referred plaintiff for an evaluation with "Crain Disability." (R. 168).

Plaintiff reported to physical therapist Tom Crain on October 5, 2004 for a physical work performance evaluation.  Plaintiff demonstrated "self-limiting participation" in eight out of twenty one tasks, reporting severe pain preventing further participation and severe fatigue and pain following participation.  Crain evaluated plaintiff's dynamic strength, position tolerance, mobility, fine motor skills, balance, coordination and endurance, and concluded that she is "capable of performing work at the *medium* level, as defined by the U.S. Department of Labor in the <u>Dictionary of Occupational Titles</u>."  He noted that plaintiff was able to complete the 3 1/2 hour evaluation without added rest periods, and concluded

that she is capable of sustaining the medium level of work for an 8-hour day. (R. 135, 140; Exhibit 7F).

On December 7, 2004, plaintiff returned to Dr. Engles. She told him that she had worn support stockings, as recommended by her insurance company, but that she had no improvement of her symptoms. She reported "significant heaviness and fatigue in the [left] leg, particularly when she is up and about," and no problems in the right leg. Dr. Engles indicated that plaintiff had "clearly failed conservative treatment," and that her symptoms would likely improve with radio frequency ablation. Accordingly, he resubmitted paperwork for approval of the procedure. (R. 172). On February 24, 2005, Dr. Engles performed the procedure. (Exhibit 9F). At a March 9, 2005 follow up visit, plaintiff told Dr. Engles that the heaviness and aching was "much improved." Dr. Engles advised plaintiff to continue wearing support stockings "when she is going to be up on her legs a lot during the day but she can otherwise increase her activities as tolerated." He indicated that the surgery had been successful, and told plaintiff to return in one year for follow up. (R. 172).

Two months later, plaintiff complained to Dr. Hooks of weakness and pain in her legs. (R. 165). In June 2005, plaintiff returned to Dr. Hooks for a gynecological examination; she indicated that she was experiencing leg pain. Dr. Hooks noted that plaintiff's gait was within normal limits. (R. 164). Nine and a half months later, on March 14, 2006, plaintiff returned to Dr. Engles for her one-year follow up appointment. He conducted venous duplex testing which showed that plaintiff's left greater saphenous vein remained closed. It also showed some reflux in plaintiff's common femoral vein. Dr. Engles explained that this is a deep

system valvular insufficiency problem and that there is no surgical intervention.  He advised plaintiff to continue to wear support stockings and to "elevate her leg whenever she can" and indicated that he would see her back "as needed." (R. 171, 173).

On July 26, 2006, plaintiff reported to Dr. Rosalina Aguilar.  The office treatment note states, "New pt for check up to have forms completed.  [Complaining of hypertension] – heart problems.  Allergies.  On meds daily for condition[.]  Pt has no other complaints."  Her chief complaint was noted to be hypertension.   Dr. Aguilar's assessment included hypertension and peripheral vascular disease.  (R. 169-70).  The following day, Dr. Aguilar completed a physical capacities evaluation form in which she indicated that plaintiff may not work around hazardous machinery, dust, allergens or fumes; that she is able to operate motor vehicles; that she is able to frequently bend, stoop, reach, push and pull with her arms and legs, and engage in gross and fine manipulation.  Dr. Aguilar indicated that plaintiff can lift ten pounds occasionally, and sit and stand for four hours each in an eight-hour work day.  (R. 177).  Dr. Aguilar noted that plaintiff does not require an assistive device to ambulate "even minimally in a normal workday."  Dr. Aguilar also completed a clinical assessment of pain observing that "[p]ain is not present in significant degree" and that physical activity would result in some increase in pain "but not to such an extent as to prevent adequate functioning." She further noted "[s]ome side effects [of prescribed medication] may be present, but not to such a degree as to create serious problems in most instances."  (R. 178-79).  Dr. Aguilar completed a clinical assessment of fatigue/weakness form, in which she indicated that "[f]atigue/weakness is not present in significant degree."  As on the pain form, she indicated

some increase of fatigue/weakness with physical activity but not to an extent as to prevent adequate functioning, and some side effects of medication, but "not to such a degree as to create serious problems in most instances." (R. 180-81).

At the administrative hearing conducted on December 19, 2006, plaintiff testified as follows:

Plaintiff was born on December 6, 1959 and completed twelfth grade. She has a driver's license and drives occasionally. She is 5'2" or 5'3" and weighs 145 pounds. She uses a cane, which was prescribed by Dr. Hooks. She can lift about five pounds. Her most pressing health issue is that she "give[s] out a ton," and has chest pain. She uses nitroglycerin daily. She gets dizzy. She has circulation problems in her legs. She takes medication which causes her to be tired and sleepy. She doesn't sleep well at night, and sleeps about four hours during the day. She gets dizzy and tired, and can tell that her circulation is not right. She wears elastic stockings. Her legs get numb and she has to elevate them from her waist or lie down. She keeps her legs elevated for several hours during the day. Her pain is mostly in her left leg. (R. 192-98).

Dr. James Anderson, a medical expert, testified that plaintiff's diagnosis of venous incompetence of the deep vein of her left leg is a "minor problem." He noted that she has hypertension and that her cardiac catheterization showed a normal heart. Dr. Anderson testified that plaintiff's medical records "reflect minimal physical difficulties." He stated,

> She has a PCE from Dr. Agular [phonetic] in July of '06 in 12F who noted some, I'm sorry, the PCE and pain questionnaire from Dr. Agular who noted that physical activity level according to that one which in my opinion is light. . . . The minimal amount of pathology noted is out of proportion to the

> symptoms.  Someone with these medical records would normally be able to do
> a full range of light work activities.

(R. 199-200).  Dr. Anderson further testified, on questioning from plaintiff's counsel about whether plaintiff's use of nitroglycerin might be indicative of heart problems, that "some physicians let people have nitroglycerin as a placebo" when it is not physically needed.  (R. 200).

A vocational expert testified that plaintiff's past work as a sewing machine operator was semi-skilled and light, and that her past work as a nurse's aide, a chicken hanger in a poultry plant and a spinner in a carpet mill were all at the medium exertional level.  He testified that a person limited as described in plaintiff's testimony or as in Dr. Aguilar's PCE – because of the ten pound lifting restriction, which would limit plaintiff to sedentary work, coupled with an inability to sit for more than four hours, since the ability to sit for six hours is required for sedentary work –  would be precluded from all work.  The vocational expert testified that a person of claimant's age, education, and vocational background, with the basic limitations as set forth in Exhibit 8F (a physical RFC assessment completed by a non-examining agency physician, Dr. Little) and additional limitations set forth by the ALJ, could perform plaintiff's past work as a sewing machine operator.  He further testified that such a person could work as a convenience store cashier, sales attendant, or waitress.  (R. 201-03).

The ALJ concluded that:

> claimant has the residual functional capacity to sit six hours and stand/walk six
> hours; lift/carry ten pounds frequently and 20 pounds occasionally;
> occasionally bend, stoop, crawl, climb stairs/ramps, crouch, kneel, balance;
> never climb ladders/ropes/scaffolds or work around hazardous machinery.
> Additionally, the claimant has mild to moderate pain which occasionally

interferes with concentration, persistence, and pace.

(R. 18).  In reaching this conclusion, the ALJ accorded "significant weight" to the opinion of the medical expert, Dr. Anderson, "substantial weight" to the RFC assessment prepared by Dr. Little (Exhibit 8F), and "considerable weight" to the assessment of Tom Crain, the physical therapist.  He accorded "very little weight" to Dr. Aguilar's assessment, and "virtually no weight" to the opinion of Dr. Hooks.  (R. 20-21).

The plaintiff argues that the ALJ erred by rejecting the opinions of her treating physicians, Dr. Hooks and Dr. Aguilar.  "If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight."  Roth v. Astrue, 249 Fed. Appx 167, 168 (11th Cir. 2007)(unpublished opinion)(citing 20 C.F.R. § 404.1527(d)(2)).   "If the treating physician's opinion is not entitled to controlling weight, . . . 'the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.'"  Id. (citing Crawford v. Commissioner, 363 F.3d 1155, 1159 (11th Cir. 2004)).  "If the ALJ finds such good cause and disregards or accords less weight to the opinion of a treating physician, he must clearly articulate his reasoning, and the failure to do so is reversible error."  Pritchett v. Commissioner, Social Security Admin, 315 Fed. Appx. 806 (11th Cir. 2009)(unpublished opinion)(citing MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)).  "When the ALJ articulates specific reasons for not giving the treating physician's opinion controlling weight, and those reasons are supported by substantial

evidence, there is no reversible error. Schuhardt v. Astrue, 303 Fed. Appx. 757, 759 (11th

Cir. 2008)(unpublished opinion)(citing Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir.

2005)). The Eleventh Circuit has found good cause for discounting a treating physician's

report when the report "'is not accompanied by objective medical evidence or is wholly

conclusory.'" Crawford, *supra* (quoting Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th

Cir.1991)). Additionally, there is good cause where the treating physicians' opinions are

"inconsistent with their own medical records," Roth, *supra* (citing Lewis v. Callahan, 125

F.3d 1436, 1440 (11th Cir.1997)) or "when the opinion appears to be based primarily on the

claimant's subjective complaints of pain." Freeman v. Barnhart, 220 Fed. Appx. 957, 960

(11th Cir. 2007)(citing Crawford, *supra*).

Plaintiff refers to Dr. Aguilar as a "treating physician." (Plaintiff's brief, Doc. # 12,

p. 5-7). However, as the ALJ noted (R. 21) and as the Commissioner argues, Dr. Aguilar

evaluated plaintiff only once. Dr. Aguilar's opinion, as that of a one-time examiner, is not

entitled to the deference accorded to the opinions of treating physicians. McSwain v. Bowen,

814 F.2d 617, 619 (11th Cir. 1987)(opinions of two physicians were "not entitled to

deference because as one-time examiners they were not treating physicians"). The ALJ

stated that he accorded Dr. Aguilar's assessment "very little weight" because, as the medical

expert testified, Dr. Aguilar's physical capacities evaluation was out of proportion to her own

records. The ALJ notes that Dr. Aguilar's single evaluation does not substantiate the residual

functional capacity she has attributed to the plaintiff. (R. 21). Dr. Anderson testified that

"[t]he minimal amount of pathology noted is out of proportion to the symptoms. Someone

with these medical records would normally be able to do a full range of light work activities."[1] (R. 200). Dr. Aguilar's record of her evaluation of the plaintiff contains little information other than plaintiff's report of her history and symptoms, and Dr. Aguilar's diagnoses. (R. 169-170). Additionally, Dr. Aguilar's PCE is inconsistent with the conclusions she expressed on the pain and fatigue forms, particularly her conclusion that plaintiff does not suffer from clinically significant pain, fatigue or weakness. (R. 178, 180). Generally, the opinions of examining physicians are given more weight than those of non-examining physicians. See 20 C.F.R. § 404.1527(d)(1). However, in this case, the ALJ articulated adequate reasons, supported by substantial evidence, for discounting Dr. Aguilar's assessment. Thus, he did not err by giving it "very little weight."

As to Dr. Hooks' opinion that plaintiff is disabled, the ALJ noted that "Dr. Hooks assessed the claimant disabled due to venous insufficiency (which is treated conservatively with support hose and leg elevation by a specialist in vascular surgery); and angina (which was found to be non cardiac by a cardiac specialist)." (R. 21). As noted above, Dr. Hooks expressed her opinion that plaintiff was totally disabled due to peripheral vascular disease and angina on forms Dr. Hooks completed for plaintiff's employer on August 5, 2004 and for a consumer credit payment protection plan on August 26, 2004. Dr. Hooks completed the first form the day after she determined that plaintiff should be referred to a cardiologist

---

[1] Plaintiff argues that "Dr. Anderson testified that he interpreted Dr. Aguilar's PCE as allowing for light work(R. 200) which was wholly wrong." (Doc. # 12, p. 5). Dr. Anderson's testimony is set forth above at p. 8. The court does not understand Dr. Anderson's testimony to be that Dr. Aguilar's PCE equated to "light work." Rather, it appears that Dr. Anderson was stating his opinion that Dr. Aguilar's assessment of plaintiff's capacity was lighter than it should have been. See R. 199-200.

for chest pain.  The cardiologist subsequently, after objective testing, determined plaintiff's chest pain to be noncardiac in origin and possibly due to a "GI source." (R. 101; Exhibits 4F, 5F).  Dr. Hooks completed the payment protection form indicating plaintiff's disability six days after the cardiac catheterization noted no abnormalities.  Additionally, at the time that Dr. Hooks completed the forms, plaintiff had yet to undergo the successful ablation of her left greater saphenous vein, which occurred on February 24, 2005.  At a follow-up appointment with her vascular surgeon in March 2005, plaintiff reported that the heaviness and aching in her left leg was "much improved." (R. 172).  At plaintiff's one year follow-up appointment, on March 14, 2006, the vascular surgeon diagnosed plaintiff with a valvular insufficiency in her left common femoral vein for which there is no surgical intervention. He advised plaintiff to continue to wear support stockings and to "elevate her leg whenever she can[.]"  (R. 171, 173).[2]   The reason the ALJ articulated for discounting Dr. Hooks' assessment is adequate and supported by substantial evidence.  Accordingly, the ALJ did not err by according "virtually no weight" to Dr. Hooks' opinion regarding plaintiff's disability.

Plaintiff further argues that the ALJ erred by relying on the opinion of the state agency medical consultant, Dr. Little, which is expressed on a RFC assessment completed in January 2005.[3]  Social Security Ruling 96-6p provides that "[f]indings of fact made by State agency

---

[2]  At the hearing before the ALJ, the medical expert testified that "[plaintiff] has a diagnosis of venous incompetence of the deep vein of [the left] leg, which is a minor problem treated with stockings an[d] diuretics if necessary." (R. 199).  The court notes that Dr. Engles' recommendation that plaintiff elevate her leg "whenever she can" does not equate to a determination that she cannot work an eight hour day without doing so.

[3]  Plaintiff argues that Dr. Little's January 2005 assessment is out of date while also arguing that the court should credit the assessments rendered by Dr. Hooks in August 2004.  However, the ALJ did not rely exclusively on Dr. Little's assessment, nor did he adopt it without modification.  The ALJ also relied on the

medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review." The Ruling indicates that the medical opinions of such consultants must be considered, and states that "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act."  The opinions of non-examining medical sources, "when contrary to those of examining [sources], are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987).  However, the ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources.  Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991).  Additionally, where the ALJ has properly discounted the opinion of an examining source, the ALJ may rely on the contrary opinions of non-examining sources.  See  Milner v. Barnhart, 275 Fed. Appx. 947 (11th Cir. 2008)(unpublished opinion)(where ALJ properly rejected conflicting opinion of one-time examining physician, ALJ did not err by giving substantial weight to the opinions of non-examining psychologists); Wainwright v. Commissioner of Social Security Administration, 2007 WL 708971 (11th Cir. 2007)(unpublished opinion)(where ALJ properly rejected examining psychologist's opinion, the ALJ was entitled to rely on the opinions of non-examining state agency psychologists).  In this case, because the ALJ

---

testimony of Dr. Anderson at the administrative hearing, which reflects that Dr. Anderson had reviewed the available medical records for treatment plaintiff obtained after Dr. Little's assessment.  (R. 199-200).

properly rejected Dr. Hooks' and Dr. Aguilar's opinions, the ALJ did not err by relying on the contrary opinions of the non-examining physicians.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and a proper application of the law. Accordingly, the decision is due to be AFFIRMED.  A separate judgment will be entered.

Done, this 9th day of July, 2009.


/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE